## CIRCUIT COURT OF THE CITY OF RICHMOND

MFS Network Technologies, Inc.

v.

Commonwealth of Virginia,
Department of Transportation,
and Ray D. Pethtel

April 19, 1994

Case No. HE-349-4

BY JUDGE RANDALL G. JOHNSON

This action is brought under the provisions of the Virginia Public Procurement Act, Va. Code § 11–35 *et seq.* At issue is the award of a contract by defendant Virginia Department of Transportation ("VDOT") to Cubic Toll Systems, Inc., for the fabrication, installation, testing, commissioning, and maintenance support of an integrated automatic toll collection system for the Dulles Toll Road in Fairfax County (the "Fastoll System"). Presently before the court are a petition of the plaintiff, MFS Network Technologies, Inc., for a preliminary injunction, and Cubic's motion to intervene.

In 1990, VDOT prepared and published a Request for Proposals for the Fastoll System. Two proposals were submitted, one by Westinghouse and one by a predecessor or affiliate of Cubic. VDOT rejected both proposals. In 1991, VDOT prepared and published a revised Request for Proposals. Westinghouse, Science Applications International Corporation ("SAIC"), Cubic, and MFS submitted proposals. Based on those proposals, VDOT announced, on December 27, 1992, its intent to award the contract to MFS, and such notice of intent was re-posted on January 4, 1993.

Subsequent to the posting of VDOT's notice of intent, Cubic and SAIC requested from VDOT complete copies of MFS' proposal records. Such requests were made pursuant to § 11–52(C)(1), which provides:

> Any competitive negotiation offeror, upon request, shall be afforded the opportunity to inspect proposal records within a reasonable time after the evaluation and negotiations of proposals are completed but prior to award, except in the event that the public body decides not to accept any of the proposals and to reopen the contract. Otherwise, proposal records shall be open to public inspection only after award of the contract.

VDOT complied with the requests, and after reviewing the records both Cubic and SAIC filed written protests, pursuant to § 11–66, of VDOT's intent to award the contract to MFS. VDOT denied the protests. While SAIC took no further action to challenge VDOT's decision, Cubic filed suit in the Circuit Court of Fairfax County pursuant to § 11–70. While that suit was pending, VDOT, in June, 1993, decided not to accept any of the proposals and to once again reopen the process. Cubic's suit was dismissed by agreement of VDOT and Cubic.

In July, 1993, VDOT prepared and published yet another revised Request for Proposals for the Fastoll System. MFS, Cubic, SAIC, and others submitted proposals. On March 11, 1994, the contract was awarded to Cubic, and MFS filed an administrative protest. When the protest was denied by VDOT, MFS filed this suit. MFS now asks that Cubic's work under the contract be enjoined during the pendency of the suit. VDOT and Cubic oppose MFS' request.

VDOT first argues that the court is without jurisdiction to issue an injunction in this case. This is so, according to VDOT, because Cubic has already begun performance, and § 11–66(B) states, in part:

> Where the award has been made but performance has not begun, the performance of the contract may be enjoined. Where the award has been made and performance has begun, the public body may declare the contract void upon a finding that this action is in the best interest of the public.

VDOT grossly misreads the statute.

First, the legislature's use of the term "enjoined" in § 11–66(B) in no way implies a power belonging only to circuit courts since the very next subsection, § 11–66(C), provides that under certain specified con-

ditions, "the public body, designated official or appeals board may *enjoin* the award of the contract to a particular bidder." Emphasis added.

Second, a proper reading of § 11–66 reveals that all of its subparts deal with *administrative* protests of awards. They deal *only* with administrative protests of awards. They have nothing at all to do with suits filed in circuit courts. In fact, the very last sentence of § 11–66(A) specifically states that "[t]his [administrative] decision shall be final unless the bidder or offeror appeals within ten days of the written decision by invoking administrative procedures meeting the standards of § 11–71, if available, or in the alternative *by instituting legal action as provided in § 11–70.*" Emphasis added. Thus, it is § 11–70, not § 11–66, which governs court actions, and § 11–70(D) refers to injunctive relief with absolutely no restriction based on whether or not performance has begun.

Moreover, if VDOT's interpretation of § 11–66(B) is correct, this court has absolutely *no* power in procurement cases once performance *has* begun. Section 11–66(B) provides that where performance has begun, "the public body *may* declare the contract void . . . ." Emphasis added. Impliedly, the public body may choose *not* to declare the contract void. Thus, it would be entirely up to the public body to decide whether or not a contract is declared void, even if the court, based on proceedings filed under § 11–70, holds that it should be. Obviously, such an interpretation is unacceptable.

The statute is clear. A public body's power to enjoin performance of a contract once performance has begun is limited by § 11–66(B). A court's power is not. The real question, of course, is whether Cubic's performance *should* be enjoined.

Before further addressing the issue of MFS' request for an injunction, it is appropriate to first take up Cubic's motion to intervene. Cubic's contract with VDOT is for $11,800,000. Whether Cubic is permitted to complete that contract is directly and entirely dependent upon the outcome of this lawsuit. Indeed, Cubic's interests in this lawsuit are at least as great as the interests of MFS, and arguably greater than those of VDOT. In any event, the court can think of no logical reason to deny Cubic's motion to intervene, and the motion is granted.

Turning now to the issue of preliminary injunctive relief, the court accepts Cubic's statement of the standard to be applied; that is, the

four-part test set out in *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029 (4th Cir. 1980); *see also Blackwalder Furniture Co. v. Serlig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977); and scores of other cases. The four factors are: (1) the likelihood of irreparable harm to the plaintiff without a preliminary injunction; (2) the likelihood of harm to the defendant with the injunction; (3) plaintiff's likelihood of success on the merits; and (4) the public interest. The court also agrees with Cubic that where the harm to the plaintiff greatly outweighs the harm to the defendant, the plaintiff need only show that a "grave or serious question" is presented, instead of a likelihood of success. *Telvest*, at 1033. An injunction will be granted here.

As already noted, the contract awarded to Cubic in this case is for $11,800,000. Cubic's performance has already begun, and the completion date is set for November, 1994. As more time passes and Cubic performs more work, the prospect of MFS obtaining any real relief, assuming it is successful on the merits, becomes almost nonexistent. Neither this court nor VDOT is likely to require Cubic to undo a nearly completed project so that a new bid process can begin. Obviously, MFS' harm in the absence of a preliminary injunction is great.

On the other hand, the harm to defendants, to whatever extent it exists, is entirely of their own making. In this regard, it must be remembered that VDOT began the bid process for the subject contract in 1990. The first intent to award was not made until December, 1992. Even then, upon learning of Cubic's intent to file a protest, VDOT "voluntarily . . . for four months refrained from awarding this contract [to MFS], which [it] could have awarded, in order to give Cubic an opportunity to make their [sic] claim." *See* Transcript of Hearing of April 29, 1993, in Chancery No. 128973, *Cubic Toll Systems v. Virginia Department of Transportation*, in the Circuit Court of Fairfax County. Why VDOT did not accord MFS the same courtesy is a complete mystery. Also a mystery is why Cubic, which also knew that MFS was certain to file a protest, and which was awarded the contract only twenty days before MFS filed this suit, has already spent 2.25 million dollars toward performance, a fact upon which Cubic relies heavily in opposing an injunction. In any event, I find that the potential harm to plaintiff if an injunction is not granted so far outweighs the harm to defendants if an injunction is granted, as to meet the test of *Telvest* so that only a "grave or serious question" need be presented in order to warrant preliminary injunctive relief. I further find that the long and

tortured history of this case, some but not all of which is set out above, in and of itself raises such serious questions as to warrant the issuance of an injunction here.

Finally, the court must also consider the public interest. While defendants point to the public's interest in having the subject project completed as quickly as possible, the court feels that it is more in the public's interest to know that Virginia's public procurement laws are being administered properly. Moreover, this project, which has already withstood delays totalling four years, can certainly withstand a further delay of approximately four months, which should be more than enough time for the case to complete its journey through this court.

Accordingly, for all of the foregoing reasons, plaintiff's motion for a preliminary injunction enjoining VDOT and Cubic from performing any work under the Fastoll System contract during the pendency of this suit will be granted.